# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 19-2019V
UNPUBLISHED

| | |
|---|---|
| TROY BODAK,<br><br>                 Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: September 8, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Richard H. Moeller, Moore, Heffernan, et al., Sioux City, IA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On December 31, 2019, Troy Bodak filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a results of an influenza ("flu") vaccine he received on October 31, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons stated below, I conclude that Petitioner has not established by preponderant evidence that the onset of his shoulder pain occurred within 48 hours of vaccination, as required for a Table SIRVA claim. And because a non-Table claim may not be possible, I shall require Petitioner to show cause why the claim in its entirety should not be dismissed.

## I.    Relevant Procedural History

Two years after the claim's initiation, Respondent filed his Rule 4(c) Report challenging compensation, arguing (among other things) that Petitioner could not demonstrate that he had suffered a Table SIRVA within the appropriate timeframe. ECF No. 39 at 7-8. To resolve this issue, a schedule was established for a fact ruling on the record. ECF No. 41.

On August 9, 2021, Petitioner filed a brief in support of his claim. ECF No. 43. Specifically, Petitioner asserted that the medical records (at least those the Petitioner accepts as correct) and witness affidavits collectively demonstrate that his left shoulder pain began within 48 hours of his vaccination. *Id.* at 7,18-22. Petitioner further submitted that the records indicate that his pain was limited to his left shoulder. *Id.* at 23-24. In response, Respondent maintained the contrary, arguing that contemporaneous medical records placed onset "well after forty-eight hours elapsed." ECF No. 44 at 1; *see also* ECF No. 44 at 11-14. Respondent further asserted that Petitioner's pain extended beyond the left shoulder in which the vaccine administered. *Id.* at 17-18. This matter is now ripe for adjudication.

## II.    Issue

At issue is whether (a) Petitioner's first post-vaccination onset (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA and (b) whether Petitioner's pain was limited to the shoulder in which the vaccine was administered. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); 42 C.F.R. § 100.3(c)(10)(iv) (pain and reduced range of motion limited to the vaccinated shoulder).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation,

and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.,* 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), aff'd, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, expert reports, Respondent's Rule 4 report, and additional evidence filed.[3] Specifically, I note the following:

- On October 31, 2018, Petitioner received a flu vaccination in his left deltoid at St. Francis Hospital. Ex. 2 at 2.

- On November 12, 2018, Petitioner presented to the Emergency Department in the evening. Ex. 3 at 6. Petitioner reported, "I had a flu shot about three weeks ago, it still hurts, and today I am unable to move my arm." *Id.* at 11. Petitioner's pain was "progressively worse" and "began after flu shot that he believes was improperly placed and caused pain." *Id.* at 16. A duration of "3 weeks" was noted. *Id.* There were no signs of neurological deficits, neck or back pain, or joint swelling. *Id.* at 17. Petitioner exhibited limited range of motion and tenderness. *Id.* The physician's impression was "shoulder pain. Likely rotator cuff tendinopathy. Doubt any relation to flu shot." *Id.* at 18. Petitioner was excused from work for three days and prescribed prednisolone and tramadol. *Id.* at 9, 15.

- Petitioner followed up at his primary care office with Dr. Ryan Colligan on November 13, 2018. Ex. 4 at 9. Dr. Colligan documented that "p[atient] states that he got a flu shot 3 weeks ago at St. Francis. He states that he

---

[3] While I have not specifically addressed every medical record, or all arguments presented in the parties' briefs, I have fully considered all records as well as arguments presented by both parties.

was fine for the first two weeks but for the past week he has had severe pain and decreased range of motion." *Id.* Duration was noted to be three weeks. *Id.* The physical exam showed, "[left] shoulder severely limited in Flexion, extension, and abduction." *Id.* at 10. An x-ray of Petitioner's left shoulder was ordered. *Id.*

- Petitioner again returned to his primary care office on November 16, 2018, this time meeting with Dr. Bliss Yoon. Ex. 4 at 6. The visit was "follow up for adhesive capsulitis" which had been "occurring for 1 week." *Id.* Petitioner now reported "he was driving last Friday on 11/9/2018 when the pain came," and onset was noted as "11/9/18 accident at work." *Id.* Petitioner's left shoulder pain radiated up the left side of his neck and was "located in the upper arm, shoulder, and entire arm." *Id.* 6, 7. Dr. Yoon noted that the x-ray ordered on November 13, 2018, was normal. *Id.* Dr. Yoon assessed Petitioner with possible adhesive capsulitis, rotator cuff injury, biceps tendon strain, and shoulder strain, though thought it was unlikely to be adhesive capsulitis due to extreme guarding. *Id.* at 7. Petitioner was referred to physical therapy and recommended to follow up with Dr. Yoon in one month. *Id.*

- On November 27, 2018, Petitioner followed-up with Dr. Yoon. Ex. 4 at 3. The history from November 16, 2018, was repeated and Dr. Yoon noted that she had seen Petitioner on November 20th[4] for his left shoulder. *Id.* Following examination, Dr. Yoon noted "left rotator cuff tendinitis. Likely supraspinatus. Also potential for subscapularis but patient is too apprehensive and will not allow for active or passive ROM of the left shoulder...unlikely to be adhesive capsulitis" *Id.* at 4. No neck pain was noted. *Id.* Dr. Yoon documented that Petitioner's injury was "likely from work since pain onset came about driving home after work." In addition to referring Petitioner to physical therapy, Dr. Yoon wrote a note for light duty. Dr. Yoon instructed Petitioner to follow up with Worker's Compensation. *Id.*

- Approximately two months after referral, Petitioner presented for a physical therapy consultation on January 29, 2019. Ex. 8 at 19. The therapist, Deborah Kargl, noted "sudden onset of severe L shoulder pain when lifting something at work," with an onset date of "11/09/2019[5]." *Id.* Petitioner also reported that "he had flu shot about two weeks prior to the pain and thought they injected into his arm too high." *Id.* His entire arm became numb intermittently. *Id.* at 21. Petitioner could only tolerate minimal movement of his left shoulder at this consultation and "appeared to be in too much radicular pain for adhesive capsulitis." *Id.* at 22. The physical therapist suggested "further testing of cervical area for radicular problem or

---

[4] This date is incorrect; Petitioner was actually seen by Dr. Yoon on November 16, 2018. *See* Ex. 4 at 6.

[5] This date appears to be a typographical error—meant to be "11/9/2018," based on prior medical records and the fact that a 2019 date remained in the future.

impingement of left shoulder." *Id.* Petitioner was recommended to visit an orthopedist prior to continuing physical therapy. *Id.*

- On February 11, 2019, Petitioner presented to a new primary care office for a complete physician exam to establish care. Ex. 5 at 18. "Sirva s/p flu vaccine" was documented under past medical history. Debra Losey, PA examined Petitioner and documented: "routine adult health examination without abnormal findings." *Id.* He did not report any pain or request any pain medication for his shoulder. He was found to have normal motor strength for upper and lower extremities as well as full range of motion. *Id.* at 19.

- On March 24, 2019, Petitioner presented to the Emergency Department for his migraines. Ex. 8 at 1. Upon examination, "normal ROM in all four extremities; non-tender to palpation" was noted. *Id.* at 5. Petitioner had full strength and intact sensation. *Id.*

- On March 25, 2019, Petitioner presented to Debra Losey, PA, for a rash and no shoulder complaints were noted. Ex. 5 at 16-17.

- On April 30, 2019, Petitioner returned to Debra Losey, PA, reporting pain in his shoulder from a flu shot six months ago. Ex. 5 at 13. He reported that the pain started immediately after administration of the flu shot. *Id.* at 14. Petitioner advised that he had a lawsuit pending but that it was not a workman's compensation case. *Id.* PA Losey noted that "it is unclear why" Petitioner had not yet been evaluated at this office for his arm pain. *Id.* She was concerned that his left shoulder pain was associated with a different mechanism of action than the flu shot injection or that Petitioner was developing frozen shoulder again. *Id.* at 13. A full shoulder exam could not be done due to pain. *See id.* at 14. Petitioner was referred to physical therapy and for x-ray and MRI imaging. *Id.* at 13.

- Petitioner followed-up with Debra Losey, PA on June 28, 2019. Ex. 5 at 9. Petitioner's MRIs were taken on June 18, 2019 and showed partial tears of the supraspinatus and infraspinatus, as well as tendinopathy. *Id.* at 10, 30-32. Petitioner was referred to an orthopedist. *Id.* at 9. Petitioner attributed his rotator cuff and tendinopathy to his employer "not accommodating [him] after the flu shot," stating that his "arm was numb" and he could not use it. *Id.* at 10.

- On July 22, 2019, Petitioner presented to Dr. Schafer for an orthopedic consultation. Ex. 6 at 7-8. Petitioner reported feeling shoulder pain "directly after" his flu shot, and "he went to the emergency room [] that same day." *Id.* at 8. Petitioner reported shoulder pain and some associated neck pain. *Id.* Petitioner lacked "10 degrees from contralateral side" and "ER 25 deg lacking 5 to 10 degrees from contralateral side." *Id.* at 9. Dr. Schafer

reviewed Petitioner's MRIs and observed degenerative change with tendinopathy and partial tearing in the supraspinatus and more substantially in the infraspinatus tendons. There was glenohumeral joint narrowing and a small joint effusion with some cystic and subchondral degenerative change in the region of the greater tuberosity, as well as moderate change in the left acromioclavicular joint with undersurface spurring. *Id.* at 10. Petitioner received a subacromial corticosteroid injection with an immediate and significant decrease in pain. *Id.* at 10-11. Based on Petitioner's history, Dr. Schafer felt that Petitioner may have received his flu vaccine in his rotator cuff muscle or bursa. *Id.* at 11. Dr. Schafer also assessed that Petitioner's tendinitis, partial-thickness tearing, and cystic changes were likely "long-standing in nature" and "aggravated" after receiving the injection while continuing with work. *Id.*  Dr. Schafer referred Petitioner to physical therapy. *Id.*

- On September 5, 2019, Petitioner followed up with Dr. Schafer. Ex 5 at 21. Petitioner reported continued pain but improved range of motion. *Id.* at 22. He had not started physical therapy and Dr. Shafer did not want to give him a repeat injection. *Id.* at 24.  "I have given him a new prescription for physical therapy and the importance of doing this was discussed with the patient today. I again told the patient that I do not think that he has a surgical issue given the fact that he only has small partial tearing and has shown improvement in his symptoms." *Id.*

The medical records contain a number of entries that are inconsistent with a finding that Petitioner's onset occurred in the timeframe set by the SIRVA Table claim. Petitioner did not report immediate onset of pain to a medical professional until six months and nine months after vaccination, respectively. These reports were made later in time and are not consistent with more contemporaneous records. And when Petitioner reported pain immediately after vaccination on April 30, 2019, he also noted the existence of a pending lawsuit and six months of pain despite multiple intervening medical visits during which no shoulder pain or limited range of motion were found or reported.[6] The history Petitioner provided of his shoulder pain nine months after vaccination (July 22, 2019) included inaccuracies such as his report that he presented to the emergency room the same day as his vaccination. *See* Ex. 6 at 8.

Compounding the lack of a contemporaneous report of onset close in time to vaccination are the inconsistent onset reports in Petitioner's medical records and in his

---

[6] Further belying the reliability of this later report is Petitioner's explanation that he established care at a new primary care office because his prior doctors were not doing anything for his shoulder. Ex. 1 at ¶18. Yet when he presented to establish care on February 11, 2019, undergoing a full physical examination, he reported no shoulder pain. Ex. 5 at 18-19.

Worker's Compensation claim.[7] Most contemporaneous to his vaccination, on November 12, 2018, Petitioner reported that his pain had been progressively worse for about three weeks, after what he believed to be a misplaced vaccination (placing onset or vaccination *prior* to October 31, 2018). Ex. 3 at 16. The next day (November 13th) at his primary care office, Petitioner reported that he had been fine for two weeks, but had severe pain in the past week (now placing onset only a few days before November 13, 2018). Ex. 4 at 9-10.

Other records announced even later onsets. During his two follow-up appointments for shoulder pain at his primary care office, Petitioner referenced lifting at work and driving on November 9, 2018, identifying that date as when his pain began. Ex. 4 at 3, 6-7. Petitioner then prepared a Worker's Compensation claim on November 27, 2018, in which he identified November 12, 2018 as his date of injury.[8] Ex. 12 at 36, 58. On January 29, 2019, Petitioner reported at his physical therapy consultation that he had a sudden onset of pain at work and he had a flu shot about two weeks prior to the pain. Onset of "11/9/2019" was noted (likely a typo for the date November 9, 2018). Ex. 9 at 18. It was not until six months post-vaccination, in the midst of a period in which he was not obtaining treatment, did petitioner revise his onset report to reflect immediate pain after the vaccination. Ex. 5 at 13-14.

All of the above preponderantly supports an onset *more than* 48 hours post-vaccination – outweighing Petitioner's arguments to the contrary. One of Petitioner's primary assertions is that Dr. Colligan's and Dr. Yoon's records are simply incorrect, and he submitted a supplemental affidavit correcting the record. ECF No. 43 at 18-19; Ex. 13. In it, he states that he never reported that he was fine for the first two weeks, never reported a work accident, and never reported that pain occurred while he was driving home from work. *Id.* ¶¶16, 18, 19, 22. Thus, in Petitioner's estimation the history documented in Dr. Yoon's record "doesn't make any sense." *Id.* at ¶22.

However, even if I were to accept Petitioner's explanation as to why these records are not trustworthy or incorrect, other records similarly fail to support his onset claim. For example, petitioner still reported "sudden onset of severe [left] shoulder pain when lifting something at work" during his physical therapy consultation on January 29, 2019, with a documented onset of November 9. Ex. 8 at 19. Petitioner further reported a flu vaccine

---

[7]Throughout the record, it appears that Petitioner may have been confused as to when he received his vaccination, or may have been counting weeks differently, as two full weeks after October 31, 2018 is November 14, 2018. Petitioner may have considered the week he received his vaccination as a week, i.e. week one being October 31, 2018-November 4, week two being November 5-November 11, and week three being November 12 on.

[8] I am aware of Petitioner's argument that this was later revised to 10/31/2018 with the mechanism of injury changed to reflect the flu shot. However, this change was made in *November 2019* - shortly before the filing of this matter and a year after petitioner's vaccination.

"two weeks *prior* to the pain." *Id.* at 21 (emphasis added). While Petitioner questions the therapist's qualifications or credentials in his brief, that argument provides no persuasive reason to give such record proof less weight. It would be unreasonable to ignore the contemporaneous treatment records, in favor of the conclusion that somehow multiple independent physicians or treaters misunderstood Petitioner's reports and/or manufactured histories.

Petitioner also submitted additional affidavits to support his claim of immediate onset following the vaccination: the affidavit of his employer at that time – Moeen Sharaf, the affidavit of his romantic partner – Tina Rollins, and the affidavit of his landlord, Janice Torneo. Ex. 14; Ex. 15; Ex. 16. While the affidavits from Ms. Rollins and Ms. Torneo facially support Petitioner's onset claim, they are inconsistent with the medical records. Ms. Rollin's statements that Petitioner had a painful time getting dressed, had difficulty sleeping, and cried out in pain during the week immediately following vaccination (Ex. 15 at ¶¶7-10), is squarely contradicted by Petitioner's reports that he was fine for two weeks and that he had a flu vaccine two weeks prior to the pain. Ex. 8 at 21; Ex. 4 at 9. On the other hand, the affidavit from Ms. Sharaf is more consistent with Petitioner's reports to his medical providers. Ms. Sharaf submitted and affirmed her handwritten workplace records that indicate Petitioner did not report shoulder pain to her until November 8, 2018 and November 12, 2018. Ex. 12 at 18; Ex. 14. Although after-the-fact statements can sometimes be deemed persuasive when consistent and compelling, the affidavits submitted in this matter do not establish immediate onset.

I acknowledge that the standard applied to SIRVA claims on the onset issue is fairly liberal, and will often permit a determination that onset began within the 48-hour timeframe set by the Table, based on records prepared a few months after vaccination, and/or corroborated by sworn witness statements intended to amplify otherwise-vague records. However, not every SIRVA claim can be so preponderantly established, and not where the medical record contradicts a Petitioner's allegations. Such is the case here. While some contemporaneous records do support a Table SIRVA onset, the *preponderance* of all evidence in its totality does not.

In addition to the onset issue, the parties in this matter disagree as to whether Petitioner's pain was limited to his left shoulder – and this too likely prevents a Table claim from going forward. Petitioner argues that there is only one instance of pain radiating to petitioner's neck documented by Dr. Yoon, and no other evidence to suggest Petitioner's pain was not limited to his left shoulder. ECF No. 43 at 23-25. However, based on my review of the entire record, it appears that Petitioner's symptoms extended beyond his left shoulder. At several appointments, Petitioner reported pain in his entire arm, pain

radiating into his neck/associated neck pain, and that his entire arm became numb at times. Ex. 4 at 6-7; Ex. 5 at 10; Ex. 6 at 8; Ex. 8 at 21.

Accordingly, I find (a) Petitioner has not preponderantly established that onset of his shoulder pain occurred within 48 hours of vaccination and (b) Petitioner's shoulder pain was not limited to his left shoulder. Petitioner cannot proceed in this action with his Table SIRVA claim. I also have doubts as to whether any causation-in-fact claim could succeed. Petitioner shall therefore show cause why the claim as a whole should not be dismissed. In so doing, he shall identify other cases in which similarly-situated parties have prevailed on a non-Table SIRVA claim under comparable circumstances.

## V.     Conclusion

**Petitioner's Table SIRVA claim is hereby dismissed. Petitioner shall, by no later than Monday, October 10, 2022, show cause as to why his claim as a whole should not be dismissed. Respondent's response to Petitioner's show cause filling will be due 30 days thereafter.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master